UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ALFREDO PORTA,

                          Plaintiff,

          -against-

EXACTECH, INC., EXACTECH U.S., INC., TPG, INC., OSTEON HOLDINGS, INC., OSTEON MERGER SUB, INC., OSTEON INTERMEDIATE HOLDINGS II, INC., and MICHAEL LACZKOWSKI,

                          Defendants.

**MEMORANDUM & ORDER**
**24-CV-2824 (NGG) (MMH)**

NICHOLAS G. GARAUFIS, United States District Judge.

This action is among thousands in a multi-district litigation concerning injuries caused by Defendant Exactech, Inc.'s allegedly defective hip, knee, and ankle orthopedic implants. (*See In re Exactech Polyethylene Orthopedic Products Liability Litigation*, 22-MD-3044 (NGG) (MMH).)

Plaintiff Alfredo Porta ("Plaintiff" or "Porta"), a recipient of Exactech, Inc.'s knee implant, filed this action against Exactech, Inc. and Exactech, U.S., Inc. (collectively, "Exactech"), Michael Laczkowski, and numerous other entities in the Connecticut Superior Court for the judicial district of Fairfield at Bridgeport, alleging products liability in violation of Conn. Gen. Stat. §§ 52-572n and 52-572q. (Compl. (Dkt. 1-1) at 1.) Exactech timely removed the state court action to the United States District Court for the District of Connecticut, invoking the court's diversity jurisdiction. (Notice of Removal (Dkt. 1) at 1.) The Judicial Panel on Multi-district Litigation subsequently ordered the case transferred to this court on April 16, 2024. (MDL Transfer Order (Dkt 31).)

Before the court is Porta's January 4, 2024 motion to remand the action to the Connecticut Superior Court on the grounds that the

parties are non-diverse and that one of the Defendant-entities did not properly consent to removal. (Plaintiff's Motion to Remand ("Pl.'s Mot.") (Dkt. 5-1) at 4, 15.) Exactech opposes the motion, asserting that Porta fraudulently joined the single non-diverse defendant and that all Defendants properly consented to removal. (Defendants' Memorandum of Law in Opposition ("Defs.' Opp.") (Dkt. 28) at 1, 14.) For the reasons that follow, Porta's motion is DENIED and Defendant Michael Laczkowski is hereby DISMISSED from this action without prejudice.

## I.   BACKGROUND[1]

On December 23, 2020, Porta underwent right knee replacement surgery at the Hospital for Special Surgeries in New York City[2] ("HSS NYC") wherein his surgeon, Dr. Scott Rodeo, implanted Exactech's total knee replacement system (the "Exactech Knee"). (Compl. ¶ 16.) Between August 2021 and February 2022, Exactech issued several recalls of the polyethylene components in their implants, including the knee implant installed in Porta. (*Id.*

---

[1] In resolving this motion, the court treats all facts alleged in Porta's Complaint as true and construes all factual and legal issues in his favor. *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998) (In the context of a motion to remand following a defendant's removal, "all factual and legal issues must be resolved in favor of the plaintiff."); *Macklin v. Lexington Ins. Co.*, No. 20-CV-05372 (ER), 2020 WL 5796814, at *2 (S.D.N.Y. Sept. 29, 2020) ("When considering a motion to remand, the district court accepts as true all relevant allegations contained in the complaint and construes all factual ambiguities in favor of the plaintiff."); *Pierre v. Capital One Fin. Corp.*, No. 21-CV-30 (PKC) (LB), 2021 WL 11690691, at *1 n.3 (E.D.N.Y. 2021) (same).

[2] The Complaint does not specify at which Hospital for Special Surgery location Porta received his knee replacement. (*See* Compl. ¶ 16.) Exactech states that Porta's surgery occurred at the Hospital for Special Surgery in New York City. (Defs.' Opp. at 1.) Porta does not dispute that assertion, and his motion to remand implies that his surgery occurred in New York City. (Pl.'s Mot. at 11.) Thus, for purposes of adjudicating Porta's motion to remand, the court assumes Porta's surgery occurred at the Hospital for Special Surgery in New York City.

¶ 23.) According to Porta, Exactech packaged its implants in vacuum sealed bags that were oxygen resistant but did not contain a secondary layer to further augment oxygen resistance. (*Id.*) This caused the polyethylene components in the implants to degrade prematurely, forcing some patients to undergo revision surgeries. (*Id.* ¶ 23.) Porta was one such patient: on January 24, 2023, he underwent right knee revision surgery with Dr. Rodeo at HSS NYC. (*Id.* ¶ 30.)

On December 1, 2023, Porta filed the instant Complaint against Exactech, TPG, Inc., Osteon Holdings, Inc., Osteon Merger Sub, Inc., Osteon Intermediate Holdings II, Inc., and Michael Laczkowski in Connecticut Superior Court, alleging products liability in violation of the Connecticut Product Liability Act (the "CPLA"), Conn. Gen. Stat. §§ 52-572n and 52-572q, and claiming punitive damages as to the corporate Defendants. (*Id.* ¶¶ 1-35, 30(2)-33(2)[3].) In short, Porta alleges that Exactech and the remaining corporate defendants (collectively, the "TPG Defendants") violated the CPLA in numerous respects, including by manufacturing the Exactech Knee in a defective manner and "failing to adequately warn Plaintiff's orthopedic surgeon, the medical community, [P]laintiff, and the public about the risks of [the implant]." (*Id.* ¶ 31.)

Porta also alleges CPLA violations against Michael Laczkowski, the only individual named in the Complaint. (*Id.* ¶¶ 20-31.) Porta claims that Laczkowski worked for Exactech and the TPG Defendants as a sales representative tasked with marketing and advertising the Exactech Knee to physicians' offices, hospitals,

---

[3] Count One—the products liability claim—spans paragraphs 1-35 of the Complaint. Instead of starting at paragraph 36, Count Two—the punitive damages claim—starts at paragraph 30 and ends at paragraph 33. (*See* Compl. Count One, Count Two.) To distinguish between the overlapping paragraph numbers, references to the paragraphs that fall under Count Two of the Complaint will be denoted by a (2) next to the paragraph number.

and other healthcare facilities, "including HSS." (*Id.* ¶ 17.) Porta further alleges that "[i]n many instances, sales reps such as [Laczkowski] were present during surgeries involving the [Exactech Knee] and provided implant components to the surgeon." (*Id.* ¶ 18.) From this, Porta asserts that Laczkowski qualifies as a "product seller" subject to liability under the CPLA, that he knew or reasonably should have known about the alleged defects in the Exactech Knee, and that he should have warned Porta, his surgeon, the medical community, and the public about the risks of the implant. (*Id.* ¶¶ 21, 31.)

Exactech timely removed the state court action to the United States District Court for the District of Connecticut, invoking the court's diversity jurisdiction. (*See* Notice of Removal at 1.)

On January 4, 2024, Porta moved to remand the action back to Connecticut Superior Court, arguing that: (1) remand is proper because both he and Laczkowski are citizens of Connecticut, thus destroying diversity under 28 U.S.C. § 1332 and rendering Exactech's removal improper under 28 U.S.C. 1441(b)(2); and (2) the TPG Defendants did not properly consent to removal as required under 28 U.S.C. § 1446(b)(2)(A) because, although Exactech obtained their written consent to removal, the TPG Defendants previously represented to Plaintiff's counsel that they would not remove the action, and they should not "be allowed to renege on the deal." (Pl.'s Mot. at 4, 15-16.) Exactech opposes the motion, asserting that Laczkowski was fraudulently joined and the TPG Defendants' written consent to removal was proper. (Defs.' Opp. at 1, 14.) Porta's motion was fully briefed before the District of Connecticut on January 29, 2024. (*See* Pl.'s Reply (Dkt. 29).)

In April 2024, the Judicial Panel on Multidistrict Litigation ordered the case transferred to the Eastern District of New York. (MDL Transfer Order at 2.) The case officially transferred to this court on April 17, 2024. (*See* Transfer Statement Dated April 17,

2024.) Thereafter, Porta voluntarily dismissed without prejudice his claims against the TPG Defendants. (Notice of Voluntary Dismissal (Dkt. 35).)

## II. DISCUSSION

Section 1332 grants federal district courts original jurisdiction over all civil actions "between . . . citizens of different States" where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). The "between . . . citizens of different States" language requires complete diversity between all plaintiffs and defendants. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005).[4]

While Section 1332 permits a plaintiff to invoke diversity jurisdiction, "[Section] 1441 gives defendants a corresponding opportunity." *Id.* Section 1441(a) provides: "any civil action brought in a State court of which the district courts of the United States have original jurisdiction[] may be removed by the defendant or the defendants[] to the district court [where the state action is pending]." 28 U.S.C. § 1441(a). However, defendants may not remove a state action to federal court on the basis of diversity if "any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." *Id.* § 1441(b)(2). Additionally, when an action "is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action." *Id.* § 1446(b)(2)(A). Ultimately, the party opposing a motion to remand "bears the burden of demonstrating the propriety of removal." *Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004).

The parties agree that Porta is a citizen of Connecticut, Exactech is a citizen of Florida, the TPG Defendants are citizens of Florida,

---

[4] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted and all alterations are adopted.

Delaware, or Texas, and Laczkowski is a citizen of Connecticut. (Notice of Removal at 3–4; see also Compl. ¶¶ 1–9 (ascribing same citizenships to parties).) The parties also appear to agree that, if Laczkowski was properly joined, his presence in this action would destroy diversity under Section 1332 and render Exactech's removal improper under Section 1441(b)(2).[5] (Pl.'s Mot. at 7; Defs.' Opp. at 2.) However, the parties dispute whether Laczkowski was fraudulently joined and whether the TPG Defendants properly consented to removal. The court addresses each dispute in turn.

## A. Fraudulent Joinder

Porta asserts that Laczkowski is a proper defendant in this action because he qualifies as a "product seller" subject to liability under the CPLA and, therefore, removal is prohibited because the parties are non-diverse and Laczkowski is a citizen of the state in which the suit was brought. (Pl.'s Mot. at 7.) Exactech argues that Laczkowski is not a "product seller" under the CPLA because he has no real connection to this case. (Defs.' Opp. at 2.) Instead, Porta fraudulently joined Laczkowski in an effort to defeat the court's diversity jurisdiction, and the court may ignore his presence for purposes of assessing jurisdiction. (*Id.*)

### 1. Applicable Law

A plaintiff "may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection [to] the controversy." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460-61 (2d Cir. 1998). This rule "is known as the doctrine of fraudulent joinder." *Brown v. Eli Lilly and Co.*, 654 F.3d 347, 356 (2d Cir. 2011). To establish fraudulent joinder, the defendant must demonstrate by

---

[5] Porta does not dispute that the remaining substantive and procedural requirements for removal are satisfied, including the amount in controversy requirement. (Pl.'s Mot. at 4, 15.)

clear and convincing evidence "either that there has been out-right fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that [the] plaintiff can state a cause of action against the non-diverse defendant in state court." *Pampillonia*, 138 F.3d at 461. Under the second option, "[a]ny possibility of recovery, even if slim, militates against a finding of fraudulent joinder; only where there is no possibility of recovery is such a finding warranted." *Rosenfeld v. Lincoln Life Ins. Co.*, 239 F. Supp. 3d 636, 639 (E.D.N.Y. 2017). Fraudulent joinder "results in dismissal of the non-diverse defendant, and denial of a motion to remand." *Id.* at 638.

While "federal law applies to the question of fraudulent joinder, the ultimate question is whether state law might impose liability on the facts involved." *Id.* at 639. Exactech argues that there is no possibility that Porta can state a cause of action against Lacz-kowski for products liability in state court. (Defs.' Opp. at 4.) Whether Porta can state a claim against Laczkowski in state court turns on whether Laczkowski qualifies as a "product seller" under the CPLA. (Pl.'s Mot. at 7.) Ultimately, Exactech bears the "heavy burden" of proving fraudulent joinder. *Pampillonia*, 138 F.3d at 461. While the court may look beyond the pleadings in conduct-ing the fraudulent joinder inquiry, it must resolve "all factual and legal issues" in favor of Porta. *Id.* at 461-62 (considering affidavit to determine whether defendant was fraudulently joined).

In Connecticut, products liability actions are governed by the CPLA, Conn. Gen. Stat. §§ 52-572m, *et seq.* The CPLA provides a single statutory cause of action for products liability claims. It "encompasses all previous common law actions against 'product sellers, including actions of negligence, strict liability, and war-ranty, for harm caused by a product.'" *Oliva v. Bristol-Myers Squibb Co.*, No. 05-CV-00486 (JCH), 2005 WL 3455121, at *4 (D. Conn. 2005) (quoting Conn. Gen. Stat. § 52-572n). The CPLA does not eliminate common law substantive rights, but rather

consolidates them into a single statutory count to simplify the pleadings. *LaMontagne v. E.I. Du Pont De Nemours & Co., Inc.*, 41 F.3d 846, 855-56 (2d Cir. 1994).

Critically, to be liable under the CPLA, a defendant must qualify as a "product seller." *See* Conn. Gen. Stat. § 52-572n(a) ("A product liability claim as provided in [the CPLA] may be asserted and shall be in lieu of all other claims against *product sellers*." (emphasis added)). The CPLA defines a "product seller" as:

> any person or entity, including a manufacturer, wholesaler, distributor or retailer who is engaged in the business of selling such products whether the sale is for resale or for use or consumption. The term "product seller" also includes lessors or bailors of products who are engaged in the business of leasing or bailment of products.

*Id.* § 52-572m(a).

The Supreme Court of Connecticut describes "product sellers" by distinguishing them from service providers, who are not subject to liability under the CPLA. *See, e.g., Normandy v. Am. Med. Sys., Inc.*, 262 A.3d 698, 704-06 (Conn. 2021) (discussing the distinction). Thus, to maintain an action under the CPLA, "the plaintiff must establish and prove, inter alia, that the defendant was engaged in the business of *selling* the product." *Zichichi v. Middlesex Mem'l Hosp.*, 204 Conn. 399, 403 (Conn. 1987). "Once a particular transaction is labeled a service, as opposed to a sale of a product, it is outside the purview of [the CPLA]." *Id.*; *see Normandy*, 262 A.3d at 705-06 (reviewing sister state decisions and concluding that hospitals predominantly held to be service providers, not product sellers); *Burkert v. Petrol Plus of Naugatuck, Inc.*, 216 Conn. 65, 72 (Conn. 1990) (finding trademark licensor not a product seller under the CPLA). Whether a defendant qualifies as a product seller is a question of law. *Burkert*, 216 Conn. at 72.

Connecticut courts have not addressed whether sales represent-
atives such as Laczkowski qualify as product sellers under the
CPLA. However, a few cases provide the court with guidance on
the issue.

In *Burkert*, General Motors Corporation ("GM") licensed to third
parties the right to use its trademark, "Dexron II," on transmis-
sion fluid if the fluid passed certain performance tests. *Id.* at 67-
68. In a lawsuit brought by buyers of allegedly defective trans-
mission fluid bearing the "Dexron II" trademark, the Supreme
Court of Connecticut determined that GM was not a product
seller under the CPLA. *Id.* at 72. The court explained that because
GM did "no more than allow others to use its . . . trademark in
the production, marketing and distribution of transmission
fluid," it was not sufficiently involved in the "stream of com-
merce" to be considered a product seller under the CPLA. *Id.*

Similarly, in *Fitzgerald v. Landscape Structures, Inc.*, a parent sued
a playground equipment manufacturer and its New England
sales representative for products liability under the CPLA and for
common law negligence following her daughter's injury on the
manufacturer's playground equipment. No. 060923, 2000 WL
1824160, at *1 (Conn. Super. Ct. 2000). The defendants argued
they were entitled to summary judgment on plaintiff's negligence
claim because the sales representative qualified as a "product
seller" and, therefore, the CPLA provided her exclusive remedy.
*Id.* at *5. The Connecticut Superior Court disagreed, concluding
that the sales representative was not a "product seller" but a ser-
vice provider outside the purview of the CPLA. *Id.* Although the
sales representative often sold playground equipment directly to
towns and local municipalities, in this instance, the *manufacturer*
sold the equipment to the town, while the sales representative
merely supervised the town's installation of the equipment. *Id.*
With "no evidence to support [defendants'] argument that it was
actually [the sales representative] that made the sale to the

town," the court concluded that the sales representative was not a product seller under the CPLA. *Id.* Apparently critical to the courts' conclusions in *Burkert* and *Fitzgerald* was the defendant's lack of involvement in the "stream of commerce" that brought the particular product to the particular plaintiff at issue. *Burkert,* 216 Conn. at 73, 77-84; *Fitzgerald,* 2000 WL 1824160, at *5.

The District of Connecticut applied the "product seller" definition in comparable circumstances in *Oliva v. Bristol-Myers Squibb.* There, the plaintiff, Daniel Oliva, sued Bristol-Myers Squibb ("BMS") and Dr. Robert Normandia in Connecticut Superior Court pursuant to the CPLA, alleging injuries stemming from his use of a drug manufactured, sold, and distributed by BMS. *Oliva,* 2005 WL 3455121, at *3. Oliva claimed that Dr. Normandia "was engaged by BMS to visit or detail physicians' offices, hospitals, and other health care facilities to promote [the drug] and to encourage physicians and other health care providers to prescribe, recommend, or utilize [the drug] for patients." *Id.* He further alleged that Dr. Normandia "made numerous sales and marketing calls on the plaintiff's treating physician," and that, during those calls, Dr. Normandia "bought lunch for the entire office and made a sales and marketing presentation concerning the alleged value of [the drug] in treating various infections." *Id.* According to Oliva, these marketing calls induced his physician to prescribe BMS's drug to him. *Id.*

The defendants removed the case to the District of Connecticut, invoking the court's diversity jurisdiction. *Id.* at *1. Oliva moved to remand the case to the Connecticut Superior Court on the ground that both he and Dr. Normandia were citizens of Connecticut, thus destroying diversity and rendering removal improper under Section 1441(b)(2). *Id.* Defendants opposed the motion, arguing fraudulent joinder. *Id.* As here, whether Dr. Normandia was fraudulently joined turned on whether he qualified as a "product seller" under the CPLA.

The district court noted that the CPLA was modeled on the United States Department of Commerce's Draft Uniform Product Liability Law ("Draft Law"), 44 Fed. Reg. 2996-3019 (1979), and, as a result, the Connecticut Supreme Court "look[s] to the commentary from that draft for guidance in applying CPLA sections similar to sections of the Draft [Law]." *Olivia*, 2005 WL 3455121, at *4. The CPLA's product seller definition is identical to the product seller definition in the Draft Law. *Compare* Conn. Gen. Stat. § 52-572m(a), *with* 44 Fed. Reg. 2997-2998. Additionally, the commentary to the Draft Law states that a product seller "includes all parties in the regular commercial distribution chain" and suggests that a party "be considered a product seller where a sale of a product is a principal part of the transaction and where the essence of the relationship between the buyer and seller is *not* the furnishing of professional skill or services." 44 Fed. Reg. 3003.

The district court concluded that the defendants were unable to show "no possibility" of liability as to Dr. Normandia. *Olivia*, 2005 WL 3455121, at *5. Although Dr. Normandia had no part in the design or manufacture of the marketing materials for the allegedly defective drug, he was "alleged to have extensive knowledge of the product and to have convinced [Oliva's doctor] to prescribe [the drug to him]." *Id.* A state court "could find that Normandia's allegedly deliberate and successful efforts to promote the sale of [the drug] rendered the sale 'a principal part of the transaction' between Normandia and [Oliva's doctor], 44 Fed. Reg. 3003, and that they show significant involvement in the stream of commerce that brought the product to the end user [*i.e.*, Oliva]." *Id.* Additionally, a state court could reasonably determine that Dr. Normandia "was particularly well placed to avert the injury to Oliva, by warning [his doctor] of [the drug's] dangers and instructing him on proper use." *Id.* Thus, the court concluded, there was a possibility that Oliva could prove Dr. Normandia was a product seller under the CPLA. *Id.* at *5-6.

2. Discussion

Porta alleges, and the court accepts as true, that Laczkowski works for Exactech as an "Area Sales Manager" covering Connecticut and parts of New York, including Westchester and Putnam Counties. (Pl.'s Mot. at 11-12.) Moreover, for purposes of the instant motion, the court accepts as true Porta's speculation that these sales territories "could well include New York City." (*Id.* at 11.) Porta also claims that Laczkowski "visit[ed] physicians' offices, hospitals, and other health care facilities (including, at a minimum, the [HSS] located in Stamford, Connecticut, Wilton, Connecticut and Hamden, Connecticut" to promote the Exactech Knee. (*Id.* at 8; Compl. ¶ 17.) Finally, Porta alleges that "in many instances, sales reps such as Michael Laczkowski[] were present during surgeries involving [the Exactech Knee] and provided implant components to the surgeon." (Pl.'s Mot. at 9; Compl. ¶ 18.)

Although he characterizes Laczkowski's declaration as "self-serving," Porta ultimately does not dispute that Laczkowski has "never attended or covered a surgery with Dr. Rodeo," that Laczkowski does not "recall ever speaking to Dr. Rodeo in any capacity," and that Laczkowski ultimately did not play a role in delivering the Exactech Knee to Porta specifically. (Laczkowski Decl. (Dkt. 1-3) ¶¶ 9-12; *see generally* Pl.'s Mot. at 11–14.) Nevertheless, Porta asserts that Laczkowski qualifies as a product seller subject to liability under the CPLA for the injuries he sustained from the Exactech Knee. (Pl.'s Mot. at 7, 14.)

Resolving all factual and legal issues in favor of Porta, the court concludes that Exactech has met its burden of proving "there is no possibility, based on the pleadings, that [Porta] can state a cause of action against [Laczkowski] in state court." *Pampillonia*, 138 F.3d at 461. While there is a dearth of caselaw regarding whether and when sales representatives such as Laczkowski qualify as product sellers under the CPLA, the few instructive

cases discussed *supra* lead the court to the conclusion that there is no possibility a state court would characterize Laczkowski as a product seller in these circumstances.

Even accepting Porta's assertion that Laczkowski works for Exactech, that his sales territories "could well include New York City," and that he has facilitated sales of the Exactech Knee to HSS locations in Connecticut, Laczkowski still has "no real connection" to *this* controversy. *Pampillonia*, 138 F.3d at 461. Unlike Dr. Normandia, who made numerous sales and marketing calls to Oliva's physician that convinced him to prescribe the allegedly defective drug to Oliva, Laczkowski has never even spoken to Dr. Rodeo, let alone convinced him to use the Exactech Knee in Porta's surgery or observed him install Porta's implant. *Oliva*, 2005 WL 3455121, at *5. Nor does Laczkowski have any sort of relationship with Dr. Rodeo or HSS NYC that would render him "particularly well placed to avert the injury to [Porta]." *Id.* Although Laczkowski, like the sales representative in *Fitzgerald*, may have convinced some physician in some other hospital to implant the Exactech Knee in some other patient, Porta does not allege that it "was actually [Laczkowski] that made the sale to [Dr. Rodeo or HSS NYC]." *Fitzgerald*, 2000 WL 1824160, at *5.

Absent some allegation demonstrating a "significant involvement in the stream of commerce that brought the [Exactech Knee] to [Porta]," the court concludes there is no possibility that a state court would classify Laczkowski as a product seller. *Oliva*, 2005 WL 3455121, at *5. Rather, Laczkowski simply has no real connection to this controversy. For that reason, "there is no possibility, based on the pleadings, that [Porta] can state a cause of action against [Laczkowski] in state court." *Pampillonia*, 138 F.3d at 461.

To conclude otherwise would subject all Exactech sales representatives to liability under the CPLA, regardless of their connection to the plaintiff's injuries. It is true that a "principal

purpose of the product liability statute is to protect people from harm caused by defective and hazardous products," and, "to meet this purpose, it is necessary that the statute be read to reach all conduct which affects the safety of a product prior to its entry into the stream of commerce." *Rodia v. Tesco Corp.*, 527 A.2d 721, 723 (Conn. App. Ct. 1987). But the court cannot conclude that the CPLA was intended to cover individual sales representatives with no connection to the specific product or plaintiff at issue. Such individuals do not engage in "conduct [that] affects the safety of [the particular] product prior to its entry into the stream of commerce." *Id.*

It therefore makes no difference whether Laczkowski advertised and sold the Exactech Knee to other HSS locations. (*See* Pl.'s Mot. at 8.) HSS has over twenty locations across New York, New Jersey, Connecticut, Florida, and even Colombia. (HSS Website (Dkt. 5-7) at ECF 2–6.) Under Porta's rationale, any sales representative who has sold or advertised the Exactech Knee to *any* HSS location would qualify as a "product seller" subject to liability under the CPLA for Porta's injuries, simply because that HSS location is part of "the corporate entity that installed the defective product in [Porta]." (Pl.'s Mot. at 8.) A sales representative who sold the Exactech Knee to the HSS in Palm Beach would be liable to Porta under the CPLA despite having no actual connection to Porta or his implant, simply because HSS Palm Beach belongs to the same parent institution as HSS NYC. The court is satisfied there is "no possibility" a Connecticut court would adopt this reading of the CPLA. *Pampillonia*, 138 F.3d at 461.

The out-of-circuit case cited in Porta's motion does not convince the court otherwise. (*See* Pl.'s Mot. at 6 (citing *Hughes v. I-Flow Corp.*, No. 08-CV-707 (SEB) (TAB), 2009 WL 10689808 (S.D. Ind. Feb. 26, 2009).) In *Hughes*, plaintiffs Roger and Pamela Hughes sued I-Flow Corporation and Darlene Rowland, an I-Flow sales representative and Indiana resident, in Indiana state

court pursuant to the Indiana Products Liability Act, alleging that Roger Hughes suffered injuries as a result of his physician's improper use of I-Flow's "pain pump." *Hughes*, 2009 WL 10689808, at *1. According to the complaint, Rowland observed Hughes's physician and his staff use and maintain I-Flow's pain pump improperly, and reportedly approved of their improper use of the pump. *Id.*

The defendants removed the action to the United States District Court for the Southern District of Indiana, invoking the court's diversity jurisdiction and asserting fraudulent joinder as to Rowland. *Id.* Applying the relevant provisions of the Indiana Products Liability Act, which holds "manufacturer[s]" and "seller[s]" liable for products liability, the Southern District of Indiana concluded there was a "reasonable possibility that Indiana might deem Ms. Rowland a 'seller' under the Act." *Id.* at *3–4. The court likened Rowland's involvement in Hughes's injuries to that of Dr. Normandia in *Oliva*, but ultimately rested its conclusion on the fact that "no Indiana court has held that a sales representative like Rowland is precluded from liability under the Act, and Indiana caselaw gives little indication [whether a particular] interpretation of 'seller' would be favored." *Id.* at *4.

*Hughes* is inapposite for several reasons. First, *Hughes* dealt with a distinct state statute in distinct legal circumstances—the Southern District of Indiana appeared to have even fewer cases at its disposal than the court does in this case. *Id.* Here, *Oliva*, *Fitzgerald*, and *Burkert* all provide support for the court's conclusion that a Connecticut court would not classify Laczkowski as a product seller under the CPLA. Second, like Dr. Normandia, Rowland contributed directly to the plaintiff's alleged injuries. Rowland advertised the pain pump to Hughes's doctor, approved of his improper use of the device, and was ultimately "particularly well placed to avert the injury to [Hughes], by warning [his doctor] of [the pump's] dangers and instructing him on proper use."

*Oliva*, 2005 WL 3455121, at *5; *Hughes*, 2009 WL 10689808, at *1–2. As discussed above, Laczkowski has no similar connection to Porta's implant or injuries. Thus, even setting aside the fact that *Hughes* is of minimal persuasive authority, it is distinguishable from the circumstances of this case.

In sum, the court concludes that Laczkowski has "no real connection with [this] controversy." *Pampillonia*, 138 F.3d at 461. The doctrine of fraudulent joinder "is meant to prevent plaintiffs from joining non-diverse parties in an effort to defeat federal jurisdiction." *Brown*, 654 F.3d at 356. Based on Porta's own allegations, Laczkowski has no more connection to this case than any other sales representative at Exactech who advertised and sold the Exactech Knee to other medical professionals at other hospitals. Laczkowski has never facilitated orders placed by HSS NYC or even spoken to Dr. Rodeo. Laczkowski's utter lack of connection to this case indicates that there is "no possibility" a Connecticut court would classify Laczkowski as a product seller under the CPLA, and that Laczkowski was fraudulently joined for the purpose of defeating the court's diversity jurisdiction. *Pampillonia*, 138 F.3d at 461.

When a non-diverse party is fraudulently joined, the court disregards that party for purposes of assessing diversity jurisdiction. *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004) (explaining that "courts overlook the presence of a non-diverse defendant if from the pleadings there is no possibility that the claims against that defendant could be asserted in state court"). Additionally, such fraudulent joinder "results in dismissal of the non-diverse defendant, and denial of [the] motion to remand." *Rosenfeld*, 239 F. Supp. 3d at 638; *Kuperstein v. Hoffman-Laroche, Inc.*, 457 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) ("Where joinder of a defendant is fraudulent, the court may dismiss the defendant from the action, and assert jurisdiction over the remaining parties."). Having determined that Laczkowski

16

was fraudulently joined, the court hereby dismisses Laczkowski from this action without prejudice.[6] However, the court must address Porta's second and final argument with respect to the TPG Defendants prior to adjudicating his motion to remand.

**B.   The TPG Defendants' Consent to Removal**

Porta next argues that the TPG Defendants "bargained away [their] right to consent" to removal because, although Exactech obtained their written consent to removal, the TPG Defendants previously told Porta that "TPG will not seek removal," and as such, they should not "be allowed to renege on the deal." (Pl.'s Mot. at 15–16; January 2, 2024 Email Exchange (Dkt. 5-9) at ECF 2.) Exactech argues that the TPG Defendants did not waive their right to consent to removal, and, regardless, the TPG Defendants kept their promise to Porta because it was Exactech who removed the action to federal court. (Defs.' Opp. at 14-15.)

1.   Applicable Law

When an action "is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). Put another way, when a defendant removes an action from state court pursuant to Section 1441(a), "the remaining defendants must independently express their consent to removal." *Pietrangelo v. Alvas Corp.*, 686 F.3d 62, 66 (2d Cir. 2012).

---

[6]   That Laczkowski is not subject to liability under the CPLA does not preclude Porta from pursuing common law claims against him. *See Burkert*, 216 Conn. at 73. The CPLA provides "only that it is the exclusive remedy for claims against *product sellers*." *Id.* (emphasis added). As such, "the statute does not foreclose common law claims against those who are *not* product sellers." *Id.* (emphasis added). Thus, Porta remains free to pursue any common law claims he may have against Laczkowski. However, the court is skeptical that any such claims would survive, given Laczkowski's utter lack of involvement in this case.

In general, "conduct said to constitute a waiver must be clear and unequivocal, as waivers are never to be lightly inferred." *Mooney v. City of New York*, 219 F.3d 123, 131 (2d Cir. 2000). Courts apply this principle to purported waivers of a party's right to remove a case to federal court. *See, e.g., Cronin v. Family Educ. Co.*, 105 F. Supp. 2d 136, 137–38 (E.D.N.Y. 2000) ("The waiver of a party's statutory right to remove a case to federal court must be clear and unequivocal."); *JP Morgan Chase Bank, N.A., v. Reijtenbagh*, 611 F. Supp. 2d 389, 390 (S.D.N.Y. 2009) ("Any waiver of the right of removal must be clear and unequivocal."); *see also Yakin v. Tyler Hill Corp.*, 566 F.3d 72, 75 (2d Cir. 2009) (An ambiguous forum selection clause "is not a clear and unequivocal waiver of federal jurisdiction.").

2. Discussion

The TPG Defendants consented to Exactech's removal via email on January 3, 2024.[7] (January 3, 2024 Email Exchange (Dkt. 1-2) at ECF 2 (Question: "Can you please confirm whether the TPG Defendants consent to Exactech's removal of the *Porta* case to the District of Connecticut based on the attached Notice of Removal?" Answer: "TPG Defendants consent.").) However, Porta argues that the TPG Defendants "bargained away [their] right to consent" because, just a day prior, counsel for TPG Defendants stated: "We can confirm that TPG will not *seek* removal, but do not represent the Exactech Defendants and make no representation on their behalf." (Pl.'s Mot. at 15-16; January 2, 2024 Email Exchange at ECF 2 (emphasis added).)

The court concludes that the TPG Defendants properly "consent[ed] to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). Even if the TPG Defendants waived *their* right to

---

[7] Counsel for Exactech represents, and Porta does not dispute, that Laczkowski also consented to removal. (Notice of Removal at 4 n.2.)

seek removal, they made no such assurances on behalf of Exactech. (*See* January 2, 2024 Email Exchange at ECF 2.) Nor did the TPG Defendants promise not to consent in the event of another defendant's removal. In other words, to the extent the TPG Defendants made a binding promise to Porta, they kept it: it was Exactech, not the TPG Defendants, who removed the action to federal court. Thus, the TPG Defendants properly consented to removal as required under Section 1446.

## III. CONCLUSION

For the foregoing reasons, Porta's motion to remand this action to the Connecticut Superior Court is DENIED and Defendant Michael Laczkowski is hereby DISMISSED without prejudice from this action.

SO ORDERED.


Dated:     Brooklyn, New York
           September 14, 2024

                                        s/Nicholas G. Garaufis
                                     NICHOLAS G. GARAUFIS
                                     United States District Judge